UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KIFA MUHAMMAD,

    Plaintiff,

    v.

SEAN ROSS,

    Defendant.

No.  2:21-CV-00776-CKD P

ORDER AND

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This case is proceeding on a Fourth Amendment excessive force claim against defendant Ross that occurred on September 20, 2019 in the course of plaintiff's arrest.[1]  See ECF No. 12 (screening order).  Currently pending before the court is defendant's motion for summary judgment.  ECF No. 34.  The motion has been fully briefed by the parties.  ECF Nos. 38-40.[2]  For the reasons explained below, the undersigned recommends

---

[1] To the extent that defendant's summary judgment motion also references a Monell claim against the City of Stockton and a state tort of assault and battery, these claims were screened out and plaintiff elected not to amend his complaint.  See ECF No. 12 at 7-9.  Therefore, the analysis of the pending summary judgment motion is limited to the sole Fourth Amendment claim pending before the court.

[2] Plaintiff's sur-reply was not considered by the court as it is an unauthorized filing.  Local Rule 230 provides for the filing of a motion, an opposition to the motion, and a reply by the moving party.  There is no provision in the Federal Rules of Civil Procedure or the Local Rules authorizing a plaintiff to file a second opposition or response to a reply.

1  granting defendant's motion and entering judgment in favor of defendant Ross.

2        **I.**      **Allegations in the Complaint**

3        Plaintiff acknowledges that he was involved in a high speed chase with police on

4  September 20, 2019 which ended when plaintiff wrecked his car in a ditch.  ECF No. 1 at 9.

5  Defendant Ross, along with other unidentified officers, approached plaintiff in the wrecked car.

6  ECF No. 1 at 9-10.  Defendant used his rapid containment baton ("RCB") to break out the

7  driver's side window of plaintiff's car.  Id. at 10.  This caused glass to get embedded in plaintiff's

8  face and eye.  Id.  "As that was taking place Ross was also hitting plaintiff in the face with the

9  RCB in his left eye leaving him with an orbit[al] fracture."  Id.  Defendant also used his RCB to

10  break plaintiff's foot and ankle.  Id.  According to plaintiff, "[t]he blow to the head and foot…

11  was so forceful that it scattered [sic] his right ankle into pieces and gave plaintiff head trauma."

12  Id.  Plaintiff was taken to San Joaquin General Hospital for treatment for his injuries.  Id. at 11.

13        **II.**      **Defendant's Motion for Summary Judgment**

14        Defendant Ross seeks summary judgment on the bases that plaintiff's claim is Heck

15  barred because he plead no contest to evading a police officer; there is no genuine issue of

16  material dispute regarding the excessive force claim on the merits; the level of force was justified

17  by the need for force; and, because defendant is entitled to qualified immunity.  ECF No. 34.

18  Defendant contends that the undisputed material facts, including evidence from multiple officers'

19  body worn cameras, demonstrate that plaintiff sustained his injuries from the crash resulting from

20  his high speed chase from the police rather than from any use of excessive force.  Specifically,

21  defendant indicates that "[t]he body worn cameras show Plaintiff sustained injuries prior to any

22  officer utilizing any efforts to get Plaintiff out of the vehicle caused by the deployment of

23  vehicle's air bag."  ECF No. 34-1 at 9.  Defendant submits that pointing a gun at plaintiff, using

24  his baton to break the car window, and grabbing plaintiff's wrist to pull him out of the car was not

25  excessive or unreasonable force based on a totality of the circumstances.  ECF No. 34-1 at 11-14.

26  Moreover, defendant is entitled to qualified immunity because "there is no clearly established law

27  preventing an officer from arresting a suspect who has committed a felony in his presence,

28  California Vehicle Code § 2800.2, evading an officer with wanton disregard."  ECF No. 34-1 at

15-16.  In support of the motion, defendant also lodged a DVD containing the body worn camera footage from defendant Ross, Officer Underwood, and Officer Delk.[3]  See ECF No. 34-7.

In his opposition, plaintiff submits that there is a genuine issue of material fact in dispute because the declarations of plaintiff and defendant "are squarely contradictory as to what force was used, when it was used and why it was used."  ECF No. 38 at 2.  Plaintiff submitted two declarations signed under penalty of perjury which reiterate the allegations in his complaint.  ECF No. 38 at 5-7; 10-11.  The only additional detail included in the declarations is plaintiff's averment that he did not resist or threaten the officers in any fashion.  ECF No. 38 at 6.  Also attached to the opposition are select portions of plaintiff's medical records from 2020 and 2021 in which he was treated for a right heel fracture.[4]  ECF No. 38 at 12-20.

By way of reply, defendant asserts that "there has been no evidence presented by Plaintiff so as to create genuine issues of material fact" that would preclude summary judgment.  ECF No. 39 at 1.  In this case, plaintiff's version of events is blatantly contradicted by the body worn camera footage that would lead a reasonable jury not to believe it.  ECF No. 39 at 2 (citing Scott v. Harris, 550 U.S. 372, 380 (2007)).  Moreover, the medical evidence presented by plaintiff does not establish that glass from the broken window went into his eye.  Id.  Thus, summary judgment in favor of defendant is warranted.  Id.

### III.   Legal Standards

#### A.  Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

---

[3] These videos are authenticated by a declaration submitted by Victoria Tracy, an Evidence Technician for the Stockton Police Department.  See ECF No. 34-4.

[4] Interestingly, the Progress Notes from December 16, 2021 indicate that plaintiff informed the doctor that he had a motor vehicle accident on September 20, 2019 in which he sustained a fracture of his right heel.  ECF No. 38 at 18.

purposes of the motion only), admissions, interrogatory answers, or other materials…."  Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be

4

believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the

facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn.  See Richards

v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

(9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts....  Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### B.  Fourth Amendment Excessive Force

An excessive force claim in the course of an arrest is analyzed under the Fourth

Amendment's "objective reasonableness" standard.  Graham v. Connor, 490 U.S. 386, 388

(1989).  Objective reasonableness is determined based on the facts and circumstances at the

moment of arrest without reference to the underlying intent or motivation of the officer.  Id. at

397.  Most importantly, the reasonableness of any particular use of force "must be judged from

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight."  Id. at 396.

The reasonableness of an officer's use of force is determined by balancing the "nature and

quality of the intrusion on the individual's Fourth Amendment interests against the importance of

the governmental interests alleged to justify the intrusion."  United States v. Place, 462 U.S. 696,

703 (1983).  In determining whether the force utilized is objectively reasonable, courts consider:

"(1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the

type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the

balance between 'the gravity of the intrusion on the individual' and 'the government's need for

that intrusion.'"  Lowry v. City of San Diego, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc)

(quoting Glenn v. Washington Cnty., 673 F.3d 864, 871 (9th Cir. 2011)).  The government's

interest in the force used is determined by assessing (1) the severity of the crime at issue, (2)

whether the suspect posed an immediate threat to the safety of the officers or others, and (3)

1   whether the suspect actively resisted arrest or attempted to escape.  Glenn, 673 F.3d at 871 (citing

2   Graham, 490 U.S. at 396).  Moreover, "[t]he calculus of reasonableness must embody allowance

3   for the fact that police officers are often forced to make split-second judgments—in

4   circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is

5   necessary in a particular situation." Graham, 490 U.S. at 396–97.

6   **IV.   Undisputed Material Facts[5]**

7        On September 20, 2019, defendant Ross was on duty as a police officer for the Stockton

8   Police Department.  Defendant's Statement of Undisputed Material Facts ("DSUF") at No. 1.   He

9   responded to an area located near Pisa Circle in Stockton, California to check for a suspect

10  involved in a domestic violence incident in Hayward, California.  DSUF at No. 1.  This individual

11  was later identified as plaintiff.  Id.   Based on information defendant Ross received from his CHP

12  scanner, he turned onto Vercelli Street and blocked plaintiff's ability to enter the victim's house.

13  CSUF at No. 2.  Defendant approached plaintiff's vehicle and as he opened the driver's door,

14  plaintiff put the car in reverse and began backing out of the driveway.  DSUF at No. 3.

15  Defendant ordered plaintiff to stop, but he didn't.  DSUF at No. 3.  Defendant returned to his

16  patrol vehicle and activated his lights.  DSUF at No. 4.  Plaintiff still did not stop his vehicle.

17  DSUF at No. 4.  Defendant Ross observed plaintiff run the stop sign at William Moss Boulevard.

18  DSUF at No. 4.  In response, defendant activated his siren and advised dispatch that plaintiff was

19  fleeing.  Id.  During the pursuit, plaintiff reached a speed of 80 miles per hour in a 30 mile per

20  hour zone, passed an elementary school while children were present, and ran a red light.  DSUF at

21  No. 5.  Defendant observed plaintiff veer to the north and continue through the intersection of

22  EWS Woods and over a ditch.  DSUF at No. 5.

23        Once plaintiff's vehicle came to a stop and the dust settled around it, defendant observed

24  major front end damage to the vehicle.  ECF No. 34-5 at 9 (Stockton Police Department Incident

25  _____

26  [5]  The court deems defendant's facts undisputed if plaintiff did not submit any evidence in
    opposition thereto.  It is the opposing party's obligation to produce a factual predicate that

27  supports a reasonable inference that can be drawn from the facts before the court on summary
    judgment.  See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985),

28  aff'd 810 F.2d 898, 902 (9th Cir. 1987).

Report).  Defendant could not see inside the car and did not receive any response when he called out to the driver to show his hands.  DSUF at No. 6.  While waiting for backup officers to arrive, defendant ran the plates on the vehicle and received information from the DOJ that plaintiff was on parole for kidnapping and was possibly armed.  DSUF at No. 7.  Defendant Ross did not approach plaintiff's vehicle until backup officers arrived.  DSUF at No. 6.  Once they approached, defendant Ross could faintly see a person inside the car.  DSUF at No. 8.  The driver's side door was locked and when defendant Ross ordered plaintiff to open it, he did not get any response.  DSUF at No. 8.  So defendant used his Rapid Containment Baton ("RCB") to break out the driver's side front window.  DSUF at No. 9.  Once it was opened, defendant reached inside the vehicle and unlocked the door.  DSUF at No. 9.  Defendant then secured his baton and opened the driver's side door.  DSUF at No. 9-10.

According to defendant Ross, plaintiff was conscious, but he did not fully cooperate with the orders he was given.  ECF No. 34-5 at 3 (Declaration of Sean Ross).  Because there was the possibility that plaintiff was armed, defendant told him that they needed to get him out of the vehicle.  DSUF at No. 10.  Defendant acknowledges grabbing plaintiff's left wrist while he was still in the car.  ECF No. 34-5 at 3.  Plaintiff was given several orders to put his right hand on top of his head.  DSUF at No. 10.  According to the defendant, plaintiff reached back behind him as defendant began to assist plaintiff out of the vehicle.  ECF No. 34-5 at 3.  As defendant did not want plaintiff to be able to grab a potential concealed weapon, he pulled plaintiff out of the vehicle and onto the ground.  DSUF at No. 11.  Defendant Ross held plaintiff's hands until other officers were able to pat him down.  DSUF at No. 11.  Ultimately, defendant handcuffed plaintiff at the scene of the car crash.  Id.  Plaintiff was arrested and issued a citation for the traffic charges violated during the high-speed pursuit.  DSUF at No. 16.  Plaintiff received medical treatment at the scene and was transported to San Joaquin County Hospital.  ECF No. 34-5 at 3.

There is no forensic evidence that defendant Ross struck plaintiff in his left eye with his baton without warning, as documented by the body camera footage from the officers at the scene

7

1   of the car crash.[6]  DSUF at No. 13.  Additionally, there is no forensic evidence that defendant

2   used his baton to break plaintiff's foot and ankle or strike him on the head, as the events were

3   documented by the body camera footage from the officers on scene.  DSUF at Nos. 14-15.

4        **V.**      **Analysis**

5         The undersigned finds that defendant has met his initial burden of informing the court of

6   the basis for his motion, and identifying those portions of the record which he believes

7   demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to

8   plaintiff to establish the existence of a genuine issue of material fact.  See Matsushita Elec.

9   Indus., 475 U.S. at 586 (1986).  The court concludes that plaintiff has not submitted sufficient

10   evidence at the summary judgment stage to create a genuine issue of material fact with respect to

11   his claim that the defendant violated his rights under the Fourth Amendment.

12         The court recommends granting defendant's motion for summary judgment based on the

13   body worn camera evidence which demonstrates that defendant Ross did not use his baton to

14   strike plaintiff in the head or legs.  See Scott v. Harris, 550 U.S. 372, 378-79 (2007) (finding that

15   at the summary judgment stage, a court should view the facts in the light depicted by undisputed

16   video evidence because the facts must be viewed in the light most favorable to the nonmoving

17   party only if there is a "genuine" dispute as to those facts.).   Plaintiff's allegation that defendant

18   Ross struck him directly in the face, eye, and ankle with his baton, is not capable of being

19   believed by a reasonable jury in light of the body worn camera evidence from the incident.  See

20   Scott, 550 U.S. at 380 (emphasizing that "[w]hen opposing parties tell two different stories, one

21   of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

22   court should not adopt that version of the facts for purposes of ruling on a motion for summary

23   judgment."); see also Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) (applying Scott where "the

24   record contains an unchallenged videotape capturing the events in question").  Plaintiff's

25   allegation that glass hit his eye from defendant's use of the baton to break the driver's side car

26   window is also contradicted by the record evidence.  Most notably, plaintiff did not complain

27

28   ————————————————

[6] Although plaintiff argues otherwise, the body camera footage speaks for itself.

1    about any glass in his eye on the body worn camera video, and the medical records he submitted

2    do not demonstrate that he sustained an eye injury or received any treatment for such an injury.

3    In this case, the body worn camera footage demonstrates that defendant Ross did not use his

4    baton to strike plaintiff in the head, eye, foot, or ankle as alleged in the complaint.  Therefore,

5    there is no genuine issue of material dispute upon which a reasonable jury could find for plaintiff.

6    For all these reasons, the undersigned recommends granting defendant's motion for summary

7    judgment.[7]

8            **VI.**    **Plain Language Summary for Pro Se Party**

9          The following information is meant to explain this order in plain English and is not

10    intended as legal advice.

11          The court has reviewed the pending motion for summary judgment, as well as the

12    evidence submitted by the parties, and has concluded that the facts of your case are not

13    sufficiently in dispute to warrant a trial on the Fourth Amendment excessive force claim.  This

14    means that your case will end without the need for a trial.

15          You have fourteen days to explain to the court why this is not the correct outcome in your

16    case.  If you choose to do this you should label your explanation as "Objections to Magistrate

17    Judge's Findings and Recommendations."  The district court judge assigned to your case will

18    review any objections that are filed and will make a final decision on the motion for summary

19    judgment.

20          In accordance with the above, IT IS HEREBY ORDERED that the Clerk of Court

21    randomly assign this matter to a district court judge.

22          IT IS FURTHER RECOMMENDED that:

23       1.  Defendant's motion for summary judgment (ECF No. 34) be granted.

24       2.  The Clerk of Court be directed to enter judgment for defendant and close this case.

25          These findings and recommendations are submitted to the United States District Judge

26

27    _____
[7] Based on this recommendation and in the interests of judicial economy, the court finds it
28    unnecessary to address defendant's remaining arguments presented in the motion for summary
judgment.

1   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

2   after being served with these findings and recommendations, any party may file written

3   objections with the court and serve a copy on all parties.  Such a document should be captioned

4   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

5   objections shall be served and filed within fourteen days after service of the objections.  The

6   parties are advised that failure to file objections within the specified time may waive the right to

7   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8   Dated:  July 27, 2023

9

10  CAROLYN K. DELANEY
    UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16  12/muha0776.msj.CJRA

17

18

19

20

21

22

23

24

25

26

27

28